HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
ERIN MURPHY (Bar No. 285087)
(E-Mail: Erin_Murphy@fd.org)
GEORGINA E. WAKEFIELD (Bar No. 282094)
(E-Mail: Georgina_Wakefield@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ADAU AKUI ATEM MORNYANG

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>ADAU AKUI ATEM MORNYANG,<br><br>　　　　Defendant. | Case No. 19-CR-00050-CJC<br><br>**NOTICE OF MOTION & MOTION FOR DISMISSAL OF THE INDICTMENT OR, ALTERNATIVELY, A NEW TRIAL**<br><br>**Hearing date: June 17, 2019**<br>**Hearing time: 9am** |

TO: UNITED STATES ATTORNEY NICOLA T. HANNA AND ASSISTANT UNITED STATES ATTORNEYS MIRI SONG AND KEVIN REIDY:

PLEASE TAKE NOTICE that on June 17, 2019 at 9:00am, or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Cormac J. Carney, United States District Court Judge, defendant Adau Akui Atem Mornyang will bring on for hearing the following motion:

/ / /

1

This motion seeks to set aside the convictions and dismiss the charges asserted in Counts 1 and 2 of the instant Indictment under Fed. R. of Crim. P. 29 or, alternatively, for a new trial under Rule 33. This motion is based on the attached memorandum of points and authorities, the records and files in this case, and any further evidence brought during any hearing in this matter.

        Respectfully submitted,

        HILARY POTASHNER  
        Federal Public Defender

DATED: May 3, 2019        By  */s/ ERIN MURPHY*  
                                   ERIN MURPHY

                               By  */s/ GEORGINA WAKEFIELD*  
                                   GEORGINA WAKEFIELD

                               Deputy Federal Public Defenders  
                               Attorneys for ADAU MORNYANG

TABLES OF CONTENTS

I. INTRODUCTION ................................................................................................. 4

II. BACKGROUND .................................................................................................. 4

    A.    The Charges ................................................................................................. 4

    B.    Evidence at Trial ......................................................................................... 5

III. ARGUMENT ....................................................................................................... 7

    A.    The government presented no evidence to prove that venue was proper in the Central District of California. .......................................................... 7

    B.    No foundation was laid for inflammatory, and repeated audio recording purportedly from Ms. Mornyang's flight. ................................ 10

IV. CONCLUSION ................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Blumberg v. Garcia*,
  687 F. Supp. 2d 1074 (C.D. Cal. 2010) .................................................................. 12

*Jackson v. Brown*,
  513 F.3d 1057 (9th Cir. 2008) ......................................................................... 12, 14

*Mooney v. Holohan*,
  294 U.S. 103 (1935) ................................................................................................ 12

*Napue v. People of State of Ill.*,
  360 U.S. 264 (1959) .......................................................................................... 12, 13

*United States v. Gadson*,
  763 F.3d 1189 (9th Cir. 2014) ................................................................................ 14

*United States v. Johnson*,
  323 U.S. 273 (1944) .................................................................................................. 8

*United States v. Lozoya*,
  No. 17-50336, 2019 WL 1562830 (9th Cir. Apr. 11, 2019) ........................ 9, 10, 11

*United States v. Lukashov*,
  694 F.3d 1107 (9th Cir. 2012) .................................................................................. 8

*United States v. Rodriguez-Moreno*,
  526 U.S. 275 (1999) .................................................................................................. 8

*United States v. Ruelas-Arreguin*,
  219 F.3d 1056 (9th Cir. 2000) ................................................................................ 11

**Statutes**

18 U.S.C. § 113(a)(4) ................................................................................................ 4, 9

18 U.S.C. § 113(a)(5) ..................................................................................................... 9

18 U.S.C. § 3232 ........................................................................................................... 8

18 U.S.C. § 3237(a) .................................................................................................... 10

18 U.S.C. § 3238 .................................................................................................. 11

49 U.S.C. § 46504 .................................................................................................. 4

**Other Authorities**

Fed. R. Crim. P. 18 ................................................................................................ 8

Fed. R. Crim. P. 21(b) .......................................................................................... 11

Fed. R. Crim. P. 33(a) .......................................................................................... 11

Fed. R. Evid. 901(a) ............................................................................................. 14

U.S. Const., Amend. VI ........................................................................................ 8

U.S. Const., Art. III, § 2, cl. 3 ............................................................................... 8

## I.  INTRODUCTION

The government accused Ms. Mornyang of (1) assaulting a flight attendant, and, (2) through that assault, interfering with that flight attendant's duties.  The alleged assault—a slap—occurred on an airplane traveling from Australia to Los Angeles.  The evidence consisted of the flight attendant's testimony, and the eyewitness testimony of one federal air marshal.  The government also relied on an inflammatory audio tape that purported to depict Ms. Mornyang screaming racial slurs and obscenities.  The jury convicted Ms. Mornyang of these allegations.  Nonetheless, this Court should dismiss the Indictment, or, alternatively grant Ms. Mornyang a new trial.

First, venue was not proper in this district.  The government was required to offer some proof that the slap occurred within this district.  The government offered none.

Even if this Court finds that venue was proper here, the interests of justice require a new trial.  The government failed to lay any foundation for the audio tape containing racial slurs and obscenities.  The government presented no witness who had ever heard the recording before, or who could confirm that it accurately captured the events, or even Ms. Mornyang's voice.  Nonetheless, the government seized on the recording's prejudicial nature, and used it against Ms. Mornyang.  Given the paucity of the evidence against Ms. Mornyang, the baseless introduction of such evidence undermined the jury's verdicts, and thus requires a new trial.

## II.  BACKGROUND

### A.  The Charges

The government charged Ms. Mornyang, an Australian citizen, with (1) interference with a flight attendant, Romeo Gutierrez, through assault, in violation of 49 U.S.C. § 46504; (2) assault of that flight attendant "by intentionally striking and beating him, specifically, by slapping [Mr. Gutierrez] in the face with her hand" in violation of 18 U.S.C. § 113(a)(4); and (3) assaulting Jeffrey Bolanowski "by intentionally striking him and beating him, specifically, by kicking [him]" in violation of 18 U.S.C. § 113(a)(4).  (Indictment, ECF No. 17.)

B.  **Evidence at Trial**

For Counts 1 and 2—which arose from the alleged assault of Mr. Gutierrez—the government's case-in-chief consisted of two witnesses. United Airlines Flight Attendant Romeo Gutierrez testified first. (ECF No. 77, Day 1 of Trial, Tr. at 17.) Mr. Gutierrez testified that he was working on Flight 99 from Melbourne, Australia to Los Angeles, California. (*Id.* at 18:11–15.) It is about a 15 hour flight. (*Id.* at 18:16–17.)

About nine hours into the flight, per Mr. Gutierrez, he heard that Ms. Mornyang was behaving erratically. (*Id.* at 52–53.) He went to investigate. (*Id.* at 56–57.) He saw and heard Ms. Mornyang in her seat, flailing her arms around, and yelling. (*Id.*) Mr. Gutierrez stated that he looked down at his watch, and observed there were five hours left in the flight. (*Id.* at 57:9–18.) He believed that they were close to Hawaii at that time. (*Id.* at 57:15–18.) He said he attempted to calm Ms. Mornyang. (*Id.* at 60–61.) Failing that, he unsuccessfully attempted to contact the pilot, and went to see his flight purser. (*Id.* at 63.) When he returned to the cabin, he saw that Ms. Mornyang was out of her seat, and approaching the galley, where two bathrooms were located. (*Id.* at 64:6–20.) Mr. Gutierrez said he told her to return to her seat. (*Id.* at 65:1–2.) Mr. Gutierrez said that she then walked backwards in the row, flailing her arms around and yelling, as he and two other flights attendants attempted to de-escalate the situation. (*Id.* at 65:3–19.) Near row 35, Mr. Gutierrez testified that Ms. Mornyang "smacked" him on the face with her left hand. (*Id.* at 34:11–13.) This occurred approximately 15 to 20 minutes after Ms. Mornyang first began screaming. (*Id.* at 32:8–15.)

Mr. Gutierrez testified that he took a 30-minute break near the front of the plane to process the alleged events, which allegedly interfered with his duties, including preparing the meal service for other passengers. (*Id.* at 38:1–10.) He further testified that he "couldn't do anything for the first two to two and a half hours because we were very busy with the whole situation that was created," including responding to the needs of the federal air marshals. (*Id.* at 37:12–25.)

The government presented only one witness who claimed he saw Ms. Mornyang slap Mr. Gutierrez. Federal Air Marshal ("FAM") Jason Jay was on board the same flight. (ECF No. 77, Day 1 of Trial, Tr. 84.) He sat in row 23, 12 rows ahead of where Ms. Mornyang stood when the slap allegedly occurred. (*Id.* at 115:12–13.) He testified that, as he went to observe the alleged incident unfolding in the aisle, he stood at row 29 of the aircraft with Ms. Mornyang's back to him. (*Id.* at 118:21–23.) He further testified that, when the slap allegedly occurred, Ms. Mornyang was facing Mr. Gutierrez. (*Id.* at 119:5–10.) Still, he testified that he saw Ms. Mornyang make eye contact with Mr. Gutierrez, and that "it was pretty much a calculated strike." (*Id.* at 91:22–25, 117:9–11.) On cross-examination, he confirmed that Ms. Mornyang was thrashing her arms around so much that he could not actually tell if her hand was open or closed. (*Id.* at 123:10–15.) Meanwhile, two neutral witnesses—one seated right where the slap allegedly occurred, and another who testified that she watched the events unfold—testified that they saw no slap. (ECF No. 78, Day 2 of Trial, Tr. 28:12–20, 34:22–23.)

During the government's case-in-chief and its rebuttal, the government relied on an audio recording that purported to be Ms. Mornyang on the flight. (ECF No. 77, Day 1 of Trial, Tr. 99:18; ECF No. 78, Day 2 of Trial, Tr. 132:4–8, 133:22; Gov't Ex. 2.) The audio recording contained loud, graphic language and racial slurs.

The government first introduced the audio recording through Mr. Jay, over the defense's objection for lack of foundation. (ECF No. 77, Day 1 of Trial, Tr. 99:18.) Mr. Jay did not make the recording. (*Id.* at 112:5–6.) He said "I believe [the recording] came from a passenger, and that passenger was seated next to her." (*Id.* at 102:22–25.) He could not remember that passenger's name. (*Id.* at 112:8) As for when it occurred, he testified that "it was in the beginning before anything else actually had transpired. So I believe she was either talking to another flight attendant or another passenger at the time." (*Id.* at 102–03.) In fact, per Mr. Jay, this purportedly was recorded when "none of us had come out of undercover yet, and we weren't even

6

involved yet." (*Id.* at 102–103.) On cross-examination, Mr. Jay conceded that he did not even receive the recording from the passenger who recorded it. (*Id.* at 112:11–13.) And, in fact, he had only heard it for the first time when the government played it in court that day. (*Id.* at 112:14–18.)

Ms. Mornyang was convicted on Counts 1 and 2, and acquitted of Count 3. (Verdict Form, ECF No. 69.)[1]

### III.  ARGUMENT

**A.   The government presented no evidence to prove that venue was proper in the Central District of California.**

The Constitution and the Federal Rules of Criminal Procedure require the government to prosecute an offense in a district where the offense was committed. *See* U.S. Const., Art. III, § 2, cl. 3; U.S. Const., Amend. VI; 18 U.S.C. § 3232; Fed. R. Crim. P. 18; *see also United States v. Rodriguez-Moreno*, 526 U.S. 275, 278 (1999). The Supreme Court has recognized that "[q]uestions of venue in criminal cases . . . are not merely matters of formal legal procedure." *United States v. Johnson*, 323 U.S. 273, 276 (1944). "They raise deep issues of public policy" and implicate "the fair administration of criminal justice and the public confidence in it[.]" *Id.; see also United States v. Lukashov*, 694 F.3d 1107, 1119 (9th Cir. 2012) (observing that

---

[1] During closing argument, the government also relied on a PowerPoint presentation. The presentation contained slides that purported to describe the elements of Counts 2 and 3, which charged assault of Mr. Gutierrez and Mr. Bolanowski, respectively. (Indictment, ECF No. 17 at 3–4.) Despite the omission of the word "wounding" from that instruction, the word "wounding" appeared in the government's PowerPoint presentation to the jury. (Jury Instructions, ECF No. 66 at p. 15.) Defense counsel objected upon the revelation of the first slide. (ECF No. 78, Trial Day 2, Tr. 114:9–11.) The Court instructed the jury that " 'wounded' is not at issue. It's just whether there was a strike or beat." (*Id.* at 114:15–16.) The government then presented another slide containing the same error regarding Count 3. The Court again instructed the jury that "[w]ounding is not at issue in this case. You just have to make the determination whether there was a strike or there was beating." (ECF No. 78, Trial Day 2, Tr. 115–16.) To preserve this issue for any appeal of Ms. Mornyang's convictions, the defense requests that the Court order the government to lodge a copy of the PowerPoint presentation with the Court.

"[p]roper venue is not a mere technicality" where "a defendant in a criminal case has a constitutional right to be tried in a district where the crime was committed"). "Venue is a question of fact that the government must prove by a preponderance of the evidence." *Lukashov*, 694 F.3d at 1120 (citing *United States v. Casch,* 448 F.3d 1115, 1117 (9th Cir. 2006); *United States v. Pace,* 314 F.3d 344, 349 (9th Cir. 2002)).

> To determine venue,
>> the " '*locus delicti* [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it.' " In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.

*United States v. Lozoya*, No. 17-50336, 2019 WL 1562830, at *6–7 (9th Cir. Apr. 11, 2019) (quoting *Rodriguez-Moreno*, 526 U.S. at 279, 119 S.Ct. 1239 (alteration in original) (footnote and citation omitted) (internal quotation omitted)). Thus, proper venue concerns two facts: (1) the nature of the crime, and (2) the location of that crime.

The essential nature of the crimes alleged in Counts 1 and 2 is assault, which, as charged in the Indictment, was the alleged slap of Mr. Gutierrez. None of the alleged misconduct occurred within the Central District of California. Accordingly, the government failed to present any evidence that venue is proper here.

The Ninth Circuit recently resolved this very issue. In *Lozoya*, Ms. Monique Lozoya was charged with assault on an airplane. *Lozoya*, 2019 WL 1562830, at *2–3. The airplane traveled from Minneapolis to Los Angeles. *Id.* at *2. Sometime around when the airplane was above the Great Plains, the passenger sitting behind Ms. Lozoya allegedly jostled Ms. Lozoya's seat. *Id.* Later in the flight, Ms. Lozoya confronted that passenger about the jostling of her seat. *Id.* She allegedly hit the passenger in the face, causing him to bleed. *Id.* The government charged Ms. Lozoya with misdemeanor

assault of the passenger in violation of 18 U.S.C. § 113(a)(4).[2] *Id.* at *2. Ms. Lozoya was convicted after a bench trial. *Id.*

As for the offense conduct—the assault—the court agreed "that the only essential *conduct* element here is the assault, and so the first prong of [the venue] inquiry is straightforward." *Id.* at *7 (emphasis in original, alteration added, quotations omitted).

The next question, then, was where the assault occurred. *Id.* The parties agreed that the assault occurred before the plane entered the Central District's airspace. *Id.* Therefore, it did not occur within this district. *Id.* The government argued that the assault was a "continuing offense," which includes "transportation in interstate or foreign commerce" under 18 U.S.C. § 3237(a).[3] *Id.* at *7–8. Thus, under section 3237(a), venue is proper where the continuing offense is completed. *Id.* at *7. The court rejected this argument. The court focused on the nature of the offense: "the assault—occurred in an instant and likely in the airspace of only one district, and the government did not prove that *any part* of that assault occurred once [the plane] entered the airspace over the Central District; indeed, it concedes that the assault ended before then." *Id.* at *7 (emphasis in original).

---

[2] The government ultimately superseded that citation with an information charging Ms. Lozoya with simple assault in violation of 18 U.S.C. § 113(a)(5). *Lozoya*, 2019 WL 1562830, at *3.

[3] That section provides, in relevant part, that
> [A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

18 U.S.C. § 3237(a).

Here, as in *Lozoya*, the government presented no evidence that the alleged assault of Mr. Gutierrez occurred in the Central District's airspace. To the contrary, Mr. Gutierrez testified that the alleged assault—the slap—occurred approximately five hours before arriving in Los Angeles. (ECF No. 77, Day 1 of Trial, Tr. 57:9–18.) As in *Lozoya*, the alleged slap was not a continuing offense, but occurred only in an instant. Because the offense could not have occurred within the Central District of California's airspace, venue was not proper here.

The fact that this was an international flight does not change the outcome. Under 18 U.S.C. § 3238, "offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender . . . is arrested or is first brought[.]" 18 U.S.C. § 3238. Here, Mr. Gutierrez conceded that the airplane was near Hawaii when the alleged slap occurred. (ECF No. 77, Day 1 of Trial, Tr. 57:15–18.) At a minimum, the government presented no evidence about where exactly the slap occurred, or that it occurred on the "high seas, or elsewhere out of the jurisdiction of any particular State or district." 18 U.S.C. § 3238. Indeed, and at best, the only evidence here suggests that the slap occurred within the jurisdiction of Hawaii, rather than "upon the high seas."

Venue was not proper in this district. This court should set aside the convictions under Counts 1 and 2, and dismiss the Indictment. *See United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1060 n.1 (9th Cir. 2000) ("When venue has been improperly laid in a district, the district court should either transfer the case to the correct venue upon the defendant's request, *see* Fed. R. Crim. P. 21(b), or, in the absence of such a request, dismiss the indictment without prejudice[.]" (citation omitted)).

**B.  No foundation was laid for inflammatory, and repeated audio recording purportedly from Ms. Mornyang's flight.**

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "In other words, the party

offering the evidence must make a prima facie showing of authenticity 'so that a reasonable juror could find in favor of authenticity or identification.'" *United States v. Gadson*, 763 F.3d 1189, 1203 (9th Cir. 2014) (quoting *United States v. Yin,* 935 F.2d 290, 996 (9th Cir. 1991) (internal quotation marks omitted)). "The item may be authenticated by extrinsic evidence, [citation omitted], such as through testimony of a knowledgeable witness[.]" *Id.* (citing Fed. R. Evid. 901(b)(1)). If "the government offers an audiotape, a witness with knowledge may testify that the recording is what it purports to be, or is a true and accurate copy of the original." *Id.* at 1203–04. Additionally, "[w]here the government offers a tape recording of the defendant's voice, it must also make a prima facie case that the voice on the tape is in fact the defendant's, whether by means of a witness who recognizes the voice or by other extrinsic evidence." *Id.* at 1204.

      The government failed to lay any foundation to authenticate the audio recording that it relied on against Mr. Mornyang. The only testimony about the source of the audio recording came from Mr. Jay, who testified that he "believe[d]" the audio came from another passenger, but he could not identify (1) who that passenger was, (2) when it was recorded, (3) how he could lay a foundation for the recording if he was not there, or (4) how he even knew it was Ms. Mornyang's voice in the recording. Although he initially testified that he had reviewed the contents of the disc containing the audio recording, he later testified that the first time he heard the audio recording was when the government played it in court. (ECF No. 77, Day 1 of Trial, Tr. 97–98, 112:14–18).

      Despite no proper foundation, the government exploited the impact of the audio during its case-in-chief and rebuttal. It was the only evidence that purported to come directly from Ms. Mornyang's mouth. Even though other witnesses testified about Ms. Mornyang's behavior on the airplane, the sheer volume, coarseness and volatile nature of the recording was distinctly and separately prejudicial. Its most obvious intended purpose was to support the government's theory that Ms. Mornyang "unleashed chaos" in the plane. (ECF No. 78, Day 2 of Trial, Tr. 106:18, 107:24, 118:16.) Consistent

with such behavior, then, the jury should have believed—and evidently did believe—the government's claim that Ms. Mornyang willfully assaulted Mr. Gutierrez.

Because the introduction of this foundationless recording undermines the reliability of the jury's verdicts on Counts 1 and 2, a new trial is necessary.

## IV.   CONCLUSION

The government failed to show that venue was proper in this district. Regardless, the verdicts here rely on foundationless yet explosive evidence.   Even if venue were proper here, the interests of justice require a new trial.

                                      Respectfully submitted,

                                      HILARY POTASHNER
                                      Federal Public Defender

DATED:  May 3, 2019               By   */s/ ERIN MURPHY*
                                      ERIN MURPHY

                                      By   */s/ GEORGINA WAKEFIELD*
                                      GEORGINA WAKEFIELD

                                      Deputy Federal Public Defenders
                                      Attorneys for ADAU MORNYANG