NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
MIRI SONG (Cal. Bar No. 291140)
KEVIN B. REIDY (Cal. Bar No. 320583)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2262/8536
     Facsimile: (213) 894-0141
     E-mail:    miri.song@usdoj.gov
                kevin.reidy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-00050-CJC |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR DISMISSAL OF THE INDICTMENT OR, ALTERNATIVELY, A NEW TRIAL |
| v. | |
| ADAU AKUI ATEM MORNYANG, | |
| Defendant. | Hearing Date: June 17, 2019<br>Time:         9:00 a.m.<br>Location:     Courtroom of the Hon. Cormac J. Carney |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys MiRi Song and Kevin B. Reidy, hereby submits its Opposition to Defendant's Motion for Dismissal or, Alternatively, a New Trial (the "Opposition").

//
//
//
//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 17, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


   /s/
MIRI SONG
KEVIN B. REIDY
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

I.    INTRODUCTION..................................................1

II.   STATEMENT OF THE FACTS........................................2

      A.   After Ordering Several Alcoholic Beverages, Defendant
           Assaulted a Flight Attendant and Interfered with His
           Ability to Perform His Duties............................2

      B.   The Jury Found Defendant Guilty..........................4

III.  ARGUMENT......................................................4

      A.   Defendant Waived Any Challenges to Venue.................4

      B.   Venue Is Proper Under 18 U.S.C. § 3238 Because the
           Offenses Began Outside of the Jurisdiction of Any
           Particular State or District and This District Is
           Where Defendant Was Arrested and First Brought...........6

      C.   Venue Is Also Independently Proper in This District
           Under 18 U.S.C. § 3237(a)................................8

      D.   In Any Case, Venue in This District Creates No
           Unfairness to Defendant..................................9

      E.   The Audio Recording of Defendant's Statements Was
           Properly Admitted.......................................10

           1.   There is no dispute that the voice identification
                was permissible....................................10

           2.   The recording was authentic because a qualified
                witness testified it was fair and accurate.........11

      F.   There Was No Undue Prejudice Warranting a New Trial.....12

IV.   CONCLUSION...................................................13

**TABLE OF AUTHORITIES**

**CASES**

Hanson v. United States,
    285 F.2d 27, 28 (9th Cir. 1960)................................. 5

United States v. Blackwood,
    878 F.2d 1200, 1202 (9th Cir. 1989)........................... 11

United States v. Gadson,
    763 F.3d 1189, 1204 (9th Cir. 2014)........................... 13

United States v. Hall,
    691 F.2d 48, 50 (1st Cir. 1982).............................. 8, 9

United States v. Johnson,
    323 U.S. 273, 275 (1944)...................................... 10

United States v. Lozoya,
    920 F.3d 1231 (9th Cir. 2019)............................... 5, 9

United States v. Matta-Ballesteros,
    71 F.3d 754, 768 (9th Cir. 1995)............................. 11

United States v. Ortiz,
    776 F.3d 1042, 1046 (9th Cir. 2015).......................... 10

United States v. Ruelas-Arreguin,
    219 F.3d 1056 (9th Cir. 2000).................................. 5

United States v. Trenary,
    473 F.2d 680, 682 (9th Cir. 1973).............................. 7

United States v. Workinger,
    90 F.3d 1409, 1415 (9th Cir. 1996)........................... 12


**STATUTES**

18 U.S.C. § 3237(a).............................................. 8

18 U.S.C. § 3238.............................................. 6, 7


**RULES**

Fed. R. Evid. Rule 901(b)....................................... 11

Fed. R. Crim. Proc. 12(b)(3)..................................... 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

At around the ninth hour of an approximately 15-hour international flight from Melbourne, Australia to Los Angeles, California, defendant ADAU AKUI ATEM MORNYANG ("defendant") ordered several alcoholic beverages, hit and yelled at her fellow passengers, and slapped a flight attendant.  Defendant slapped the flight attendant before the plane had reached any particular State or district, and this assault interfered with the flight attendant's ability to perform his duties for the rest of the flight.  After the plane landed in the Los Angeles International Airport, defendant was arrested and charged for her offenses.  Following two days of trial, the jury found defendant guilty of assaulting the flight attendant and of interfering with his duties.  Defendant raises two post-trial challenges to these convictions.

First, defendant aims at venue and misses the mark.  Defendant raised this issue of venue for the first time at the conclusion of the government's case-in-chief, despite having notice of the purported defect far in advance.  Defendant's untimely attack constitutes waiver.  But even if this Court were to consider this issue on the merits, venue was proper for two reasons: (a) the assault occurred over the high seas, thus making this district, as the place in which "the offender . . . [was] arrested or [was] first brought," proper venue under 18 U.S.C. § 3238; and (b) this case involved transportation in foreign commerce, which is considered a "continuing offense" that can be "prosecuted in any district from, through, or into which such . . . imported person moves" under 18 U.S.C. § 3237, thus independently establishing venue.

Second, defendant raises meritless evidentiary objections.  The audio recording of defendant subjecting others on the plane to her (in her own words) "coarse" and "explosive" language was authenticated by a witness who was familiar with defendant's voice and who was present in the moments prior, during, and after the slap.  Prior to playing the recording, the witness stated what the defendant was screaming on the plane.  He then stated that what the jury was going to hear was mild compared to what defendant said during the remainder of the flight.  Thus, the witness was able to attest to the accuracy of the recording, provide context for the recording, and provide additional and independent testimony regarding defendant's other later conduct and words, which he described as far worse.  There is therefore no evidentiary issue combined with any undue prejudicial effect that would warrant a new trial.

This Court should deny defendant's motion and uphold her convictions.

**II.   STATEMENT OF THE FACTS**

   **A.   After Ordering Several Alcoholic Beverages, Defendant Assaulted a Flight Attendant and Interfered with His Ability to Perform His Duties**

On January 21, 2019, defendant ordered several alcoholic beverages while on a flight from Melbourne, Australia to Los Angeles, California.  (See Docket No. 78: Day 2 Transcript at 27:25 to 28:1.)  Based on the amount that she ordered, the flight attendants politely cut her off from ordering yet even more.  (See Docket No. 77: Day 1 Transcript at 23:23 to 24:50)  About an hour later, however, passengers approached the flight crew to complain about defendant's behavior, which included yelling obscenities and racial slurs and flailing her arms.  (Id. at 24:6-11 to 26:2.)  Veteran flight

attendant of 22 years, Romeo Gutierrez (also referred to herein as the "victim flight attendant"), approached defendant to see if she needed any help and to ask her to calm down. (Id. at 26:6-19.) Defendant did not calm down and instead escalated her aggressive behavior and "smacked" Mr. Gutierrez. (Id. at 34:9-13.)

Federal Air Marshal Jason Jay, who was undercover in plainclothes and who was observing this incident, broke his anonymity as soon as he observed her striking Mr. Gutierrez. (Id. at 90:9-16.) Defendant was escorted to the back of the airplane, where she was placed in handcuffs and continued to harass the people around her for the rest of the remaining five hours of the flight to Los Angeles. (Id. at 94:11-23.) Meanwhile, Mr. Gutierrez could not resume his normal duties as a flight attendant because he "was in shock," a sentiment he repeated multiple times: "I was in shock. I was in shock. I wasn't sure. I was trying to process what had just happened. I never thought I was going to get physically assaulted at work so I was in shock." (Id. at 18:2-3 and 35:5-9.) The incident jarred Mr. Gutierrez so much that for half an hour after he was assaulted, he could not physically do anything and had to sit down and calm his nerves. (Id. at 38:1-10.) Federal Air Marshal Jay stayed with defendant at the rear galley of the plane and away from the crew and other passengers, such that the flight attendants, including Mr. Gutierrez, could not prepare for services for the other passengers for the remainder of the flight. (Id. at 38:25 to 39:12.)

When defendant was allowed to use the lavatory at one point, she remained there for forty-five minutes and refused to leave, even though the plane was entering turbulence. (Id. at 104:1 to 105:8.) Defendant had to be carried out. (Id.) During this time, she

3

struggled with the federal air marshals and kicked Federal Air Marshal Jeffrey Bolanowski in the chest.  (Id. at 105:11-24.) Defendant continued to yell racial slurs and obscenities for the rest of the flight.  (Id. at 108:1-14.)

### B. The Jury Found Defendant Guilty

After two days of trial, the jury found defendant guilty of two out of the three counts against her.  Specifically, defendant was convicted of interfering with the flight attendant and his ability to perform his duties (count one) and of assaulting the flight attendant by striking him (count two).  The jury acquitted as to count three, which charged defendant's assault on a Federal Air Marshal Jeffrey Bolanowski.

### III. ARGUMENT

### A. Defendant Waived Any Challenges to Venue

Defendant's venue challenge is waived because she neither moved to dismiss the indictment for improper venue before trial, nor challenged venue during the government's case-in-chief.  This is despite the fact that the purported defect in venue was apparent on the indictment's face and further confirmed by discovery provided to defendant before the indictment was even filed.  Specifically, defendant was provided the victim flight attendant's interview stating that the plane was near Hawaii at the time of the slap. Instead of raising it for the nearly two months before trial or even in the moments before the government rested, defendant chose the close of the government's case-in-chief to raise the issue for the first time, after both the Court and the government expended immense resources.

//

The Ninth Circuit has held that a defendant waives any challenge to venue where she fails to raise an objection until after the close of the government's case in chief, where the defect in venue "is clear on the face of the indictment." Hanson v. United States, 285 F.2d 27, 28 (9th Cir. 1960) ("The general rule has long been that an objection as to venue must be raised before the government has completed its case."); United States v. Ruelas-Arreguin, 219 F.3d 1056 (9th Cir. 2000) (holding that if defect in venue clear on the face of indictment, a defendant's objection must be raised before the government has completed its case).

Here, the purported defect in venue was clear on the face of the indictment.  The indictment makes clear that the basis for venue was the fact that the plane landed in Los Angeles County, within the Central District of California.  (See Docket No. 17: Indictment.) Specifically, venue is premised on the fact that the flight "landed in Los Angeles County" and not on the conduct element taking place there.  (Id.)  United States v. Lozoya, 920 F.3d 1231 (9th Cir. 2019), is therefore distinguishable.  The Ninth Circuit there held that the defect in venue was not apparent on the face of the superseding information, which charged the assault as taking place on a plane in the charging district.  See Lozoya, 920 F.3d at 1238; see also United States v. Lozoya, CR No. 16-43(A)-AB, Docket No. 21 ("On or about July 19, 2015, in Los Angeles County, within the Central District of California . . . defendant [], while on a civil aircraft . . . assaulted passenger . . . .)

Unlike the defendant in Lozoya, defendant here had notice that venue rested on where the plane landed, not where the assault took place.  (See Docket No. 17: Indictment at p. 3 "On or about January

5

21, 2019 while on an aircraft . . . from Melbourne, Australia to Los Angeles, California, which landed in Los Angeles County . . . defendant [] assaulted R.G. . . .")[1]  Defendant was therefore obligated to make her venue challenge before the close of the government's case.

Independently, Rule 12(b)(3) of the Federal Rules of Criminal Procedure provides that "if the basis for the motion is . . . reasonably available and the motion can be determined without a trial on the merits," the motion "must be made before trial."  This includes motions to dismiss for improper venue.  Fed. R. Crim. P. 12(b)(3)(A)(i).  Since the purported "defect in instituting the prosecution" -- the fact that the government was relying on the flight's destination and not on the place of conduct to establish venue -- was apparent from the indictment, defendant was obligated to raise the motion before trial.  Id.  Defendant's failure to do so constitutes an independent basis to find that defendant has waived this claim.

### B. Venue Is Proper Under 18 U.S.C. § 3238 Because the Offenses Began Outside of the Jurisdiction of Any Particular State or District and This District Is Where Defendant Was Arrested and First Brought

If not waived, the attack on venue still fails on the merits under 18 U.S.C. § 3238.  Section 3238 generally establishes venue for offenses "begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district" in "the

---

[1] Defendant also had the benefit of the victim flight attendant's interview prior to the filing of the indictment, which provided that the assault occurred close to Hawaii, thus further confirming that venue was premised on where the plane landed, not where the assault occurred.

6

district in which the offender . . . is arrested or is first brought." Defendant does not dispute that she was arrested in this district. Defendant does not dispute that she was first brought into this district. What defendant disputes is where the slap occurred.

Defendant suggests that the slap happened within the jurisdiction of Hawaii. The facts do not support this. When the victim flight attendant recalled the events surrounding and including the slap in response to defense counsel's questions, he stated that the events occurred with five hours left in the flight, which he stated meant that they were near Hawaii:

> Q: And you saw that there were about five hours left in the flight?
> A: It was 1:30 a.m. Pacific time.
> Q: And so you knew at that point that you were near Hawaii, correct?
> A: Most likely. If you are five hours outside of the West Coast, you would be close to Hawaii, yes."

(See Docket No. 77: Day 1 Transcript at 57:9-20.) As this testimony establishes, the plane was "close to Hawaii" -- not at, in, or over Hawaii -- but close to it. The reasonable inference is that the plane had not yet reached Hawaii. As such, it logically follows that the offense happened before the plane reached any particular State or district, and Section 3238 establishes venue in this district as the place where defendant was "arrested or [was] first brought." 18 U.S.C. § 3238. Under the applicable preponderance of the evidence standard, the government thus met its burden to show that venue was proper in this district, and not Hawaii. See United States v. Trenary, 473 F.2d 680, 682 (9th Cir. 1973) ("Venue may be proved by a preponderance of the evidence and by either direct or circumstantial evidence.").

Even if the Court were to find that the government did not meet its burden of establishing proper venue as to the slap, that would not warrant reversal on the interference with the flight attendant count. That offense lasted for the remaining five hours of the flight until the plane landed in Los Angeles and therefore could not possibly have occurred solely within the airspace over Hawaii. Defendant's interference was comprised of her course of disruptive behavior, including the slap with lasting effects. See, e.g., United States v. Hall, 691 F.2d 48, 50 (1st Cir. 1982) (holding that the defendant's offense of interfering with a flight attendant lasted until he was removed from the plane in light of his threatening, assaultive, and completely unpredictable behavior throughout the flight, even though defendant sat quietly in his seat during the time the plane was over the charging district.)

### C.  Venue Is Also Independently Proper in This District Under 18 U.S.C. § 3237(a)

Even if the Court were to find that the offense happened in Hawaii, contrary to the evidence that defendant herself elicited at trial, the defendant's claim would still fail. Under Section 3237(a), "[a]ny offense involving . . . transportation in interstate or foreign commerce . . . is a continuing offense" such that venue is appropriate "in any district from, through, or into which such commerce . . . or person moves."[2]  Defendant urges this Court to

---

[2] 18 U.S.C. § 3237(a) is divided into two paragraphs. The first provides:

> [A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

8

apply Lozoya blindly without acknowledging that case's critical nuances and distinguishing factors that make it inapplicable here. One of the offenses here -- interference with a flight attendant -- directly implicated interstate or foreign commerce because it was an assault on a flight attendant employed by a commercial airline during the scope of his employment.  The flight attendant was unable to perform his duties as a flight attendant, including serving the passengers on that flight.  According to the Ninth Circuit, this nexus between the offense and interstate or foreign commerce was a critical and missing factor in Lozoya, which merely involved a passenger assaulting a fellow passenger during a domestic flight that landed in Los Angeles.  That offense of simple assault was deemed ordinarily a state offense that "itself did not implicate interstate or foreign commerce."  Lozoya, 920 F.3d at 1240.  Not so here. Lozoya is therefore distinguishable, and venue was proper also under Section 3237(a).

**D.  In Any Case, Venue in This District Creates No Unfairness to Defendant**

The purpose of the venue safeguard is to ensure fairness to defendants and setting venue in the landing district "creates no unfairness to defendants, for an air passenger accused of a crime of this type is unlikely to care whether he is tried in one rather than another of the states over which he was flying."  Hall, 691 F.2d at

---

The second defines a continuing offense under the statute and provides that:

> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and . . . may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

1  50-51 (1st Cir. 1982); see also United States v. Johnson, 323 U.S.
2  273, 275 (1944) (explaining that the purpose of the venue safeguard
3  was to prevent "the unfairness and hardship to which trial in an
4  environment alien to the accused exposes him").

5  Indeed, it is fairer to defendants to try them in the district
6  of the plane's destination -- the location they intentionally
7  traveled to, in which they are arrested, and in which the
8  investigation took place and the evidence is located -- rather than
9  in a flyover district to which they have no ties and never intended
10 to travel.  Here, defendant intentionally purchased a flight that
11 landed in Los Angeles, California.  Los Angeles-based FBI agents
12 conducted the investigation of the offense in the Central District of
13 California.  It is therefore fairer to try defendant in the Central
14 District of California, where the flight landed and where the
15 investigation took place, rather than in a flyover district that
16 defendant has no ties to, never intended to travel to, and that has
17 no connection to the charged conduct and related investigation.

**E. The Audio Recording of Defendant's Statements Was Properly Admitted**

    1. <u>There is no dispute that the voice identification was permissible</u>

21 The government introduced into evidence an audio recording of
22 defendant's statements while on the aircraft on January 21, 2019.
23 Federal Air Marshal Jay authenticated the recording and confirmed
24 that it was the defendant speaking.  This followed testimony from
25 Federal Air Marshal Jay that defendant was vocal throughout the
26 remaining five hours of the flight and that she addressed him
27 directly multiple times.  See United States v. Ortiz, 776 F.3d 1042,
28 1046 (9th Cir. 2015) (holding that voice identification under Federal

Rule of Evidence 901(b)(5) required "minimal familiarity"). The voice identification was within Federal Air Marshal Jay's perception and memory, and "ultimately [defendant's] challenges go to the weight rather than the admissibility." Id.

### 2. The recording was authentic because a qualified witness testified it was fair and accurate

The foundation required for the introduction into evidence of audio recordings is a matter largely within the discretion of the trial court. There is no rigid set of foundational requirements. See United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995), modified, 98 F.3d 1100 (9th Cir. 1996) (holding that recordings are sufficiently authenticated if "sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification"). Federal Rule of Evidence 901 requires only that the United States make "a prima facie showing of authenticity so that a reasonable juror could find in favor of authenticity or identification," and the "probative force of the evidence offered is, ultimately, an issue for the jury." United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989).

The government made a prima facie showing of authenticity. Federal Air Marshal Jay stated that he had reviewed the audio recording prior to coming Court, as indicated by the initials ("J.J.") and the date of review ("3/12/19") he wrote on the disc that contained the audio recording. (See Docket No. 77, 97:16-98:2.) He further confirmed that the recording was a fair and accurate recording of defendant's statements and that the statements were "mild [compared] to what was going on pretty much for the rest of the five hours of that flight." (Id. at 98:5-6.) See Fed. R. Evid. Rule

11

901(b) (a party may authenticate evidence through "[t]estimony [of a witness with knowledge] that a matter is what it is claimed to be"). Once the government met this prima facie showing, "the probative value of the evidence [was] a matter for the jury." United States v. Gadson, 763 F.3d 1189, 1204 (9th Cir. 2014) (citing United States v. Workinger, 90 F.3d 1409, 1415 (9th Cir. 1996)). The Court "[did] not abuse its discretion in admitting evidence that meets the minimum requirements for authentication." Id.

Defendant misconstrues Federal Air Marshal Jay's response to the question regarding his first time hearing the audio recording. That question specifically asked, "So you heard it when the Government played it for you; is that right?" (Docket No. 77: Day 1 Transcript, at 112:14-15). Importantly, the question did not ask, as defendant's motion represents, whether the first time he heard the recording was "when the government played it in court." (Motion at 11:20-21.) This is important because Federal Air Marshal Jay testified that he met with the government and prepared for trial prior to testifying, which included signing and dating the disc. (Id. at 138:14-20.) Thus, there was no contradictory fact that negated the foundation laid, specifically that he had reviewed the recording prior to coming to Court and that the recording was "a fair and accurate recording of the defendant's statement." (Id. at 97:16 to 98:6.) At this point, it was up to the jury to give the recording due weight. The recording was properly admitted.

**F.   There Was No Undue Prejudice Warranting a New Trial**

Additionally, there was no unfair prejudice that warrants a new trial. Throughout trial, there was testimony from the victim flight attendant, the federal air marshals, and defendant's own witness,

12

Gina Currie, that defendant's language was crude, disruptive, obscene, and loud.  Federal Air Marshal Jay gave examples of additional statements that defendant made during the flight that were consistent with the tone, tenure, and frequency of defendant's verbal assault on the people around her.  "[Defendant] used numerous amounts of derogatory language, racial slurs.  She called me a house nigger.  She told me that I was a disgrace to my race . . . . She – I can recall she called a flight attendant – a female flight attendant a white bitch.  She used a lot of colorful language."  (Id. at 96:24 to 97:4.)  Evidence of not just the fact of defendant's conduct and words, but also their severity, was necessary for the jury to consider because it rebutted any defense by defendant that her actions were the product of a post-traumatic stress disorder, which was not substantiated at trial; that she was treated unfairly because of her race, as she intimated in her interviews with law enforcement; or that the federal air marshals were untoward or used excessive force against her, which was another potential defense she hinted in her interviews.

This Court rejected defendant's attempts to sanitize her own words in her motion in limine, and it also rejected the defendant's attempts to sanitize her own words at trial.  Defendant should not now be allowed to capitalize on the "explosive" and "coarseness" of her own words and conduct as a basis for a new trial.

**IV.   CONCLUSION**

For the foregoing reasons, the Court should deny defendant's motion.