NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MIRI SONG (Cal. Bar No. 291140)
KEVIN B. REIDY (Cal. Bar. No. 320583)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2262/8536
     Facsimile: (213) 894-0141
     E-mail:    miri.song@usdoj.gov
                kevin.reidy@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>        v.<br><br>ADAU AKUI ATEM MORNYANG,<br><br>   Defendant. | No. CR 19-50-CJC<br><br>GOVERNMENT'S SENTENCING POSITION<br><br>Hearing Date: July 15, 2019<br>Hearing Time: 10:00 a.m.<br>Location:     Courtroom of the<br>              Hon. Cormac J.<br>              Carney |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys MiRi Song and Kevin B. Reidy, hereby files its Sentencing Position.

//

//

//

//

//

//

This Sentencing Position is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 1, 2019         Respectfully submitted,

                                  NICOLA T. HANNA
                                  United States Attorney

                                  BRANDON D. FOX
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                    /s/
                                  MIRI SONG
                                  KEVIN B. REIDY
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant ADAU AKUI ATEM MORNYANG ("defendant") stands convicted of interference with a flight attendant and assault by striking and beating of that same flight attendant in an international flight from Melbourne, Australia to Los Angeles, California.  The victim flight attendant served as a flight attendant for 22 years and was never physically attacked on the job until defendant assaulted him.  The victim was shocked and could not physically do anything except sit for nearly half an hour to process what had happened to him.  The victim did nothing to deserve this attack.  He was courteous to defendant throughout the flight and tried to help her multiple times, while still serving and protecting the other passengers on the flight.  To make matters worse, defendant's attack did not stop at the physical assault.  She continued to shout obscenities, including calling a black federal air marshal a "house nigger" and a female flight attendant a "dumb white trash bitch," and disrupted the victim flight attendant's abilities to perform his duties and serve the other passengers for hours.

The United States Probation and Pretrial Services Office ("USPO") has filed a Presentence Investigation Report ("PSR") in this matter, calculating the total offense level as 9, and determining that defendant is criminal history category I.  (PSR ¶¶ 28 and 35.)  The Guidelines range is therefore 4 to 10 months.  The USPO recommends three years of probation, a $2,000 fine, and a $125 special assessment.

The government concurs with the USPO's calculations, but recommends the following in light of the factors set forth in 18

U.S.C. § 3553(a): a one-month term of imprisonment with three months of home detention as a condition of supervised release as to counts one and two; two years of supervised release, consisting of two years as to count one and one year as to count two (to run concurrently); $125 in special assessment, consisting of $100 as to count one and $25 as to count two; and a $2,000 fee, consisting of $1,000 as to count one and another $1,000 as to count two.

## II. STATEMENT OF FACTS

On January 21, 2019, defendant ordered several alcoholic beverages while on a flight from Melbourne, Australia to Los Angeles, California before lashing out at her fellow passengers and flight crew. (PSR ¶ 8. See also Docket No. 78: Day 2 Transcript at 27:25 to 28:1.) Based on the amount that defendant ordered, the flight attendants politely cut her off from ordering yet even more. (See Docket No. 77: Day 1 Transcript at 23:23 to 24:50.) About an hour later, however, passengers approached the flight crew to complain about defendant's behavior, which included yelling obscenities and racial slurs and flailing her arms. (Id. at 24:6-11 to 26:2.) Veteran flight attendant of 22 years, R.G. (also referred to herein as the "victim flight attendant" and "the victim"), approached defendant to see if she needed any help and to ask her to calm down. (Id. at 26:6-19.) Defendant did not calm down and instead moved through the plane aisle, hitting several seated passengers while she continued to yell obscenities. (PSR ¶ 9.) Defendant escalated her aggressive behavior and "smacked" the victim flight attendant. (See Docket No. 77: Day 1 Transcript at 34:9-13.)

Federal Air Marshal Jason Jay, who was undercover in plainclothes and who was observing this incident, broke his anonymity

2

as soon as he observed her striking the victim.  (Id. at 90:9-16.) Defendant was escorted to the back of the airplane, where she was placed in handcuffs and continued to harass the people around her for the rest of the remaining five hours of the flight to Los Angeles. (Id. at 94:11-23.)  Meanwhile, the victim flight attendant could not resume his normal duties as a flight attendant because he "was in shock," a sentiment he repeated multiple times:  "I was in shock.  I was in shock.  I wasn't sure.  I was trying to process what had just happened.  I never thought I was going to get physically assaulted at work so I was in shock."  (Id. at 18:2-3 and 35:5-9.)  The incident jarred the victim so much that for half an hour after he was attacked, he could not physically do anything and had to sit down and calm his nerves.  (Id. at 38:1-10.)  Federal Air Marshal Jay stayed with defendant at the rear galley of the plane and away from the crew and other passengers, such that the flight attendants, including the victim flight attendant, could not prepare for services for the other passengers.  (Id. at 38:25 to 39:12.)

When defendant was allowed to use the lavatory at one point, she remained there for forty-five minutes and refused to leave, even though the plane was entering turbulence.  (Id. at 104:1 to 105:8.) Defendant had to be carried out.  (Id.)  During this time, she struggled with the federal air marshals and kicked Federal Air Marshal J.B. in the chest.  (Id. at 105:11-24.)

Defendant continued to yell racial and misogynistic slurs, including calling Federal Air Marshal Jason Jay, who is African American, a "house nigger," and a female flight attendant a "dumb white trash bitch," for the remaining five hours of the flight.  (Id. at 96:24-97:4.)

3

III. THE PRESENTENCE INVESTIGATION REPORT

The USPO found that the total offense level was 9 pursuant to USSG § 2A5.2(A)(4) and that defendant is in criminal history category I. This results in a Guidelines range of 4 to 10 months of imprisonment (Zone B of the Sentencing Table). (PSR ¶ 106.) Thus, defendant is eligible for the following types of sentences: (1) a sentence of imprisonment; (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in USSG § 5C1.1(e), provided that at least one month is satisfied by imprisonment; and (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in USSG § 5C1.1(e). (Id.)

The USPO recommends 3 years of probation, which is a variance from the Zone B recommended sentence of probation with a condition of either home confinement or residential re-entry center placement. (Docket No. 90: Disclosed Recommendation Letter at 5-6.) The USPO is also recommending a special assessment fee of $125 and a fine of $2,000.

IV. THE GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends a custodial term of four months' imprisonment, which is at the low end of the applicable Guidelines range, as to counts one and two. The four months should be served with one month in imprisonment and three months of home detention as a condition of supervised release. Such a sentence is sufficient, but not greater than necessary to reflect the serious nature and circumstances of defendant's conduct, and also to deter defendant and

4

others from committing similar crimes in the future.

Defendant's conduct and its potential dangerous consequences should not be minimized. Flying, much less flying internationally for over 14 hours, is an uncomfortable and miserable experience in tight and crammed spaces. Defendant purposefully exacerbated those conditions when she chose to get inebriated and lash out at the flight crew and fellow passengers. Her behavior was so severe, unpredictable, and unmanageable that several federal air marshals were forced out from undercover. In doing so, defendant forced them to lose a critical tool for strategic advantages against combating bad actors on the plane: their anonymity. As Federal Air Marshal Jason Jay testified at trial, the federal air marshals do not board the plane in uniform. Instead, they are in plainclothes so that they can maintain the element of surprise. When the federal air marshals were forced to identify themselves as law enforcement, they lost that tactical advantage and their ability to combat potential bad actors on the plane was compromised.

While the government is sympathetic of defendant's tragic and sad past, defendant's unprovoked physical attack of a flight attendant and the potential dangerous consequences of that action warrant a custodial term. A two-year period of supervised release would also ensure that defendant is getting the services she needs, including mental and alcohol abuse counseling, while deterring future similar conduct. Finally, as the USPO found, defendant has the financial ability to pay a fine within the applicable range of $2,000 to $20,000. (PSR ¶ 102.) As such, she should be required to pay the USPO-recommended fine of $2,000, in addition to the mandatory special assessment of $125.

## V. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court impose a sentence of a one-month term of imprisonment with three months of home detention as a condition of supervised release as to counts one and two; two years of supervised release, consisting of two years as to count one and one year of supervised release as to count two (to run concurrently); $125 in special assessment, consisting of $100 as to count one and $25 as to count two; and a $2,000 fee, consisting of $1,000 as to count one and another $1,000 as to count two.